UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**NICOLAS MARIO PASQUALONE,**

      **Petitioner,**

                                            Case No. 1:02-CV-840

v.                                                Hon. Gordon J. Quist

**KURT JONES,**

      **Respondent.**

                                    /

**REPORT AND RECOMMENDATION**

      Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254.

**Background**

      Petitioner was convicted of second degree murder in 1987 (PBR 101).[1] On August 11, 1998, he was released on parole for a scheduled term of 24 months (PBR 50-53). While on parole, Pontiac Police officers recovered heroin from petitioner's jacket pocket during a traffic stop on October 14, 1999 (PBR 47). Petitioner was arrested on a charge of heroin possession and arraigned in the 50th District Court with a $20,000 cash bond (PBR 47). In addition, petitioner was charged with two counts of parole violation: possession of a controlled substance (heroin) and failed to comply with Parole Board Special Condition 2.1 (being in possession of heroin) (PBR 46).

      The state criminal charges were dropped on December 9, 1999 (PBR 42). However, petitioner was arraigned on the parole violation charges, pled not guilty, and was appointed counsel

---

[1] Citations to petitioner's Parole Board Record (docket no. 15) will be referenced as (PBR "page #").

(PBR 38-40). At a hearing held on January 20, 2000, Pontiac Police Officer Wittebort ("Wittebort") testified regarding the traffic stop and the discovery of the heroin (PBR 34-35). The hearing officer found Wittebort's testimony credible and that petitioner was in possession of the heroin (PBR 34-35). The hearing officer noted that the criminal case was dismissed due to an illegal search, but that the illegally seized evidence was admissible at the parole violation hearing (PBR 34). The hearing officer recommended that petitioner be incarcerated for 12 months before further parole consideration (PBR 34-37). The Michigan Parole Board adopted the hearing officer's recommendation and directed that petitioner be incarcerated for 12 months before further parole consideration (PBR 32).

The possession of heroin charge was re-instated in December 2000 in *People v. Pasqualone*, Oakland Cir. Ct. Case No. 00-175820-FH. *See* Presentence Investigation Report (PIR), attached as Respondent's Exh. 1. A hearing to suppress evidence (the "evidentiary hearing") was held on February 22, 2001. *See* evid. trans. attached to petition as Exh. E. On December 26, 2001, petitioner pled guilty to disorderly conduct and received a sentence of 90 days in the county jail. *See* PIR.

Petitioner filed a writ of habeas corpus under state law which was denied. *See Pasqualone v. Jones*, Montcalm Cir. Ct. No. 00-H-415-AH (Order, Oct. 23, 2001) (docket no. 13). Petitioner raised the following issues on appeal to the Michigan Court of Appeals:

1. Whether plaintiff's statutory due process rights [pursuant] to MCL [§] 791.239a(6) were violated when the parole board's hearing officer allowed evidence that was not summarized to be presented against plaintiff pursuant to MCL [§] 791.239a(5) to be used against the plaintiff, and found plaintiff guilty of parole violations contrary to MCL [§] 791.239a (6), which prohibits a finding of guilt based on evidence that was not summarized pursuant to MCL [§] 791.239a(5)?

    2.    Whether plaintiff's 14th Amendment constitutional due process rights were violated when the parole board's witness, Officer Steven Wittebort, knowingly gave false and [perjurious] testimony against the plaintiff, and the parole board hearing officer relied on the false and [perjurious] testimony to find plaintiff guilty of parole violations?

    3.    Whether the parole board ceded jurisdiction to revoke plaintiff's parole when the parole board failed to issue [a] written statement of the findings of fact and reasons for determination to revoke parole within the [statutorily] [mandated] 60-days of the plaintiff's availability for return to a state correctional facility pursuant to MCL [§] 791.240a(6)?

*Pasqualone v. Department of Corrections*, No. 238873 (Mich. App.) (docket no. 13). The Michigan Court of Appeals denied the petitioner's complaint on June 4, 2002. *Id.* Petitioner raised the same issues in an application for leave to appeal to the Michigan Supreme Court, which that court denied. *Pasqualone v. Department of Corrections*, No. 121829 (Mich.) (Sept. 30, 2002) (docket no. 14).

Petitioner raises two issues in his present habeas petition:

    I.    14th Amendment Due Process violation by failure to give notice of the change of witness (prosecution) prior to conducting [the] formal Parole Violation Hearing, contrary to state and federal law.

    II.    14th Amendment Due Process violation when the witness knowingly gave false and [perjurious] testimony to the formal parole violation hearing.

Petition at ¶ 12.

## Discussion

### I.    Standard of Review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254 which provides that a federal district judge "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Where the state court has adjudicated a claim

on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the case differently than a Supreme Court decision based upon a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *Lopez v. Wilson*, No. 01-3875, slip op. at 3 (6th Cir. Oct. 7, 2005) (*rehearing en banc*). An unreasonable application of clearly established Federal law occurs "when the state court identified the correct legal principle from the Supreme Court but unreasonably applied the principle to the facts of the case before it." *Lopez*, slip op. at 3, *citing Williams*, 529 U.S. at 405.

## II. Exhaustion

Before a state prisoner may seek habeas relief in federal court he must first fairly present the substance of his federal claims to all available state courts, thereby exhausting all state remedies. *Picard v. Connor*, 404 U.S. 270 (1971); *Clemmons v. Sowders,* 34 F.3d 352, 354 (6th Cir.

1994); *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994). Petitioner has exhausted the substance of his habeas issues in the Michigan state courts.

### III. Petitioner's Habeas claims

### A. Parole revocation

There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7; 99 S. Ct. 2100 (1979). Although a state may establish a parole system, it has no duty to do so and thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Id.* at 10-11; *Board of Pardons v. Allen*, 482 U.S. 369, 373; 107 S. Ct. 2415 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991). The Sixth Circuit, noting "the broad powers of the Michigan procedural authorities to deny parole," has held that the Michigan system does not create a liberty interest in parole. *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (*en banc*).

However, once a prisoner has been granted parole, due process protections apply to parole revocation proceedings. *See Morrissey v. Brewer*, 408 U.S. 471 (1972); *Bennett v. Bogan*, 66 F.3d 812, 818 (6th Cir. 1995); *Sneed v. Donahue*, 993 F.2d 1239, 1241 (6th Cir. 1993). The minimum requirements of due process applicable to parole revocation hearings include a preliminary hearing and a revocation hearing. *Morrissey*, 408 U.S. at 485-90. Petitioner waived his preliminary hearing, so that issue is not before the court (PBR 49).

Here, petitioner contends that he was deprived of due process at the revocation hearing. The minimum due process requirements for a revocation hearing include: written notice

5

of the claimed violations of parole; the opportunity to be heard in person and to present witnesses and documentary evidence; the disclosure to the parolee of the evidence against him; the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing the confrontation); a "neutral and detached" hearing body; and a written statement by the factfinders as to the evidence relied on and the reasons for revoking parole. *Morrissey*, 408 U.S. at 489. While a parole revocation hearing provides minimum due process protections, the Supreme Court has emphasized that "there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense." *Id.* A parole revocation hearing "should be flexible enough to consider evidence including letters, affidavits and other material that would not be admissible in an adversary criminal trial." *Morrissey*, 408 U.S. at 489. *See, e.g.*, *United States v. Kirby*, 418 U.S. 621, 628 (6th Cir. 2005) ("it is well-established that the court may consider evidence at a revocation hearing that would be inadmissible in a criminal prosecution").

### B. Notice of change of witness

First, petitioner contends that his due process rights were violated because Wittebort testified at the revocation hearing rather than his partner, Officer Hembree ("Hembree"). The incident report stated that the facts of the two parole violations "can be attested to by Officer Hembree of the Pontiac Police Department" (PBR 46). While petitioner contends that he and his counsel "prepared a defense specifically in anticipation of Officer Hembree testifying," nothing in the record suggests that his defense was prejudiced by the appearance of Wittebort rather than Hembree. Petitioner's Memorandum of Law at 9. Petitioner is constitutionally entitled to notice of the charges against him. *See Morrissey*, 407 U.S. at 489. However, this court is aware of no authority, and petitioner presents none, that he had a federal constitutional right to be notified of a

change of witness prior to the parole revocation hearing. "Technical errors in the parole revocation process do not rise to the level of a constitutional issue." *Linton v. Walker*, 26 Fed. Appx. 381, 383-84 (6th Cir. 2001). A parolee must show prejudice before the court will find a due process violation. *Id. See, e.g., White v. United States Parole Commission*, 856 F.2d 59, 61 (8th Cir. 1988) (defective notice did not present constitutional claim where petitioner did not show prejudice). Significantly, there is no suggestion by petitioner that he did not have an opportunity to confront and cross-examine this witness. Furthermore, neither petitioner nor his counsel sought to postpone the hearing when Hembree failed to appear (PBR 1-101).[2] Accordingly, I cannot conclude that petitioner is entitled to federal habeas relief on this claim.

### C.     Alleged false statements

Next, petitioner seeks federal habeas relief on the ground that Wittebort gave false, inaccurate and perjured testimony at his parole revocation hearing. In support of his claim, petitioner has submitted a partial transcript of an evidentiary hearing held in the second heroin prosecution to demonstrate the alleged inconsistencies in Wittebort's testimony. *See* Evid. trans. attached to petition as Exh. E.[3]

#### 1.     Wittebort's statements are not grounds for federal habeas relief

Petitioner's claim is not subject to federal habeas review. First, petitioner has failed

---

[2] MCL § 791.240a(3) provides that "[a] fact-finding hearing may be postponed for cause beyond the 45-day time limit on the written request of the parolee, the parolee's attorney, or, if a postponement of the preliminary hearing has been granted beyond the 10-day time limit, by the parole board."

[3] Petitioner submitted the partial transcript as an exhibit to the Michigan Court of Appeals, the Michigan Supreme Court and his federal habeas petition. The court notes that petitioner has consistently omitted pages 3 through 7, pages 36 through 82, and pages 101 through 107 of the transcript to all reviewing courts. The omissions include the attorneys' opening and closing arguments, the testimony of petitioner's arresting officer (Hembree), petitioner's testimony and the state court's ruling on the motion.

to show that petitioner committed perjury. Under Michigan law, perjury is defined as follows, "[a]ny person authorized by any statute of this state to take an oath . . . who shall wilfully swear falsely, in regard to any matter or thing, respecting which such oath is authorized or required, shall be guilty of perjury." MCL § 750.423. Petitioner presents no evidence that Witteborte was found guilty of perjury. Noticeably absent from the evidentiary hearing transcript is the judicial ruling on Witteborte's credibility. *See* Evid. trans.[4]

Even if Wittebort had given perjured or false testimony at the parole revocation hearing, such testimony, in and of itself, did not violate petitioner's federal constitutional rights. "It is well-established that the introduction of perjured testimony, without more, does not rise to the level of a constitutional violation warranting federal habeas relief." *Tayborn v. Scott*, 251 F.3d 1125, 1130 (7th Cir. 2001). While the Supreme Court has held a prosecutor's use of perjured testimony in a criminal trial violates a criminal defendant's due process, the Court "has not held that the false testimony of a police officer in itself violates constitutional rights." *Briscoe v. Lahue*, 460 U.S. 325, 326 n. 1 (1983). Accordingly, petitioner's claim that Witteborte gave false or perjured testimony is not grounds for federal habeas relief and should be dismissed.

### 2. Due process claims

Petitioner's only conceivable due process claim would be based not upon Witteborte's false testimony, but upon the prosecution's use of that false testimony to deceive the fact-finder. It

---

[4] Petitioner has included a copy of pages 29-30 of what he identifies as the transcript of the preliminary examination hearing in 50th District Court on December 14, 1999. *See* Memorandum of Law at 8; Exh. B attached to Memorandum. Assuming that these are in fact copies of the preliminary hearing transcript in petitioner's original heroin case, and that the officers at issue were Witteborte and Hembree, the state court found only that the officers gave "diametrically opposed" testimony regarding the initial traffic stop and dismissed the case for lack of probable cause. *See* Exh. B. While the court observed inconsistencies in the officers' testimony, there was no finding that either Witteborte or Hembree committed perjury. *Id.*

is well-established that a criminal defendant's due process rights may be violated if the prosecutor knowingly presents false evidence to the jury. *See Giglio v. United States*, 405 U.S. 150 (1972). Such a due process claim is subject to federal habeas review because a "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice." *Giglio*, 405 U.S. at 153 (quotation marks omitted). To prevail on a false-testimony claim, petitioner must show "(1) that the prosecution presented false testimony; (2) that the prosecution knew was false, and (3) that was material." *Abdus-Samad v. Bell*, 420 F.3d 614, 625-26 (6th Cir. 2005). *See also United States v. Hawkins*, 969 F.2d 169, 175 (6th Cir. 1992). In such cases, the statement must be "indisputably false" rather than "merely misleading." *Abdus-Samad*, 420 F.3d at 626, *quoting Byrd v. Collins*, 209 F.3d 486, 517-18 (6th Cir. 2000).

The question arises as to whether the *Giglio* rule applies to parole revocation hearings. Neither party has cited authority, and this court is aware of none, to support the proposition that a false testimony claim under *Giglio* applies to a state parole revocation hearing. "[A] parole revocation hearing is not a criminal prosecution," *Barnes v. Johnson*, 184 F.3d 451, 454 (5th Cir. 1999), and should not be equated to a criminal prosecution "in any sense," *Morrissey*, 408 U.S. at 489.[5] Nevertheless, the court concludes that *Giglio* should apply to a parole revocation hearing, to the extent that the state should not be allowed to commit a "deliberate deception" on the parole board through the use of known false evidence. Minimum due process protections apply to parole revocation hearings. *Morrissey*, 408 U.S. at 489. To allow the state to introduce known false evidence to a parole board would be "incompatible with rudimentary demands of justice." *Giglio*,

---

[5] *See, e.g.,* MCL § 791.240a(1) (under Michigan law, a parolee accused of a parole violation "is entitled to a fact-finding hearing on the charges before 1 member of the parole board or an attorney hearings officer designated by the chairperson for the parole board").

9

405 U.S. at 153. Accordingly, the court will apply the *Giglio* rule to the evidence presented at petitioner's Michigan Parole Board fact-finding hearing.

Here, petitioner contends that Wittebort gave the following false testimony at the parole revocation hearing: (1) that Wittebort "did not conduct the field test on the suspected heroin at the scene, and that his testimony that he did was false;" (2) that Wittebort "did not hear [p]etitioner give consent to search or admit to having heroin on him;" (3) that Wittebort "did not directly observe anything being recovered from the [p]etitioner during the search;" and, (4) that Wittebort "did not write or issue [p]etitioner any traffic tickets, and that his prior testimony that he did was false and inaccurate." Petition at 15-16. However, nowhere in his petition or other filings does petitioner claim that the state's representative at the parole board hearing knew that Wittebort gave false testimony at the parole revocation hearing. Petitioner's failure to address prosecutorial knowledge is fatal to his due process claims. Accordingly, petitioner's claims fail to establish a due process violation under *Giglio*.

### 3.   The alleged false testimony

In the alternative, petitioner's claims also fail because the testimony at issue was either not "indisputably false" or was not material to the parole revocation charges.

#### a.   Field test of heroin

At the parole revocation hearing, Wittebort testified that he performed the field test on the heroin. Evid. trans. at 88, 96, 99. At the state court evidentiary hearing, Wittebort testified that he did not field test the heroin, that in fact Hembree tested it, and that his earlier testimony at the parole revocation hearing was inaccurate. *Id.* at 27-28. Wittebort testified that he did not have his report with him at the parole revocation hearing and that he made a mistake. *Id.* at 28. In short,

10

Wittebort admitted that his testimony was wrong. However, this testimony was cumulative of the Michigan State Police laboratory report which definitively established that the substance was heroin (PBR 36). *Id.* at 90. The testimony regarding the field test was not material, because the identification of the heroin was established by the State Police laboratory report. *See, e.g., Byrd*, 209 F.3d at 517-18 (false statement of evidence that was merely cumulative is not material).

        **b.**        **Petitioner's consent to search, admission of possessing heroin and Wittebort's observation of items recovered during the search**

At the parole revocation hearing, Wittebort testified that "when [petitioner] exited the vehicle again and placed his hand on the vehicle and the Terry pat was done, when he stated that he had some heroin on him, and the next I know Officer Hembree went to the pocket and waved it in the air and said, Witt, here it is." Evid. trans. at 91-92. Petitioner contends that these statements are false, i.e., that Wittebort "did not hear [p]etitioner give consent to search or admit to having heroin on him" and that the officer "did not directly observe anything being recovered from the Petitioner during the search." Petition at 15-16.

Petitioner relies on Wittebort's testimony from the evidentiary hearing to demonstrate that Wittebort's testimony was false. At this later evidentiary hearing, Wittebort stated that he saw Hembree conduct a "Terry pat," that he did not see anything recovered from petitioner's body with his "own eyes," that he was later informed that Hembree had recovered the heroin from petitioner and that he had seen the heroin. Evid. trans. at 18, 26. Wittebort further testified that petitioner volunteered to allow the officers to search his car and that he was "not sure" whether Hembree "was asking for permission to search [petitioner's] person." *Id.* at 27.

11

Wittebort's testimony at the parole revocation hearing may have been misleading, but was not "indisputably false." The questions posed to Wittebort at the revocation hearing elicited narrative answers and included statements made by Hembree at the scene. At the revocation hearing, Wittebort testified that Humbree searched petitioner, talked to petitioner and ordered petitioner in and out of the car. Evid. trans. at 87-92. Wittebort testified that he did not hear portions of the conversations that occurred between Humbree and petitioner. *Id.* at 92. Nothing in Wittebort's testimony at either the revocation hearing or the evidentiary hearing suggests that he watched Humbree perform all aspects of the search or that petitioner spoke to Wittebort. Rather, Wittebort testified that he was involved in searching the two passengers in petitioner's vehicle. *Id.* at 87-92. Finally, nothing in the record suggests that Wittebort made a false or misleading statement regarding petitioner's admission that he had heroin on his person at the time of the search.

### c. Traffic ticket

At the revocation hearing, Wittebort testified that petitioner was issued a ticket for failing to signal and that he remembered slipping the ticket into petitioner's prison property. Evid. trans. at 99. Petitioner states that Wittebort "did not write or issue Petitioner any traffic tickets, and that his prior testimony that he did was false and inaccurate." Petition at 15-16. Petitioner relies on Wittebort's testimony at the evidentiary hearing, in which the officer testified that he did not write any tickets, that he did not put tickets into petitioner's property and that he made a mistake at the revocation hearing when he testified that he placed the tickets into petitioner's property locker at the jail. Evid. trans. at 30-31. The officer also testified that he "didn't recall" the issuance of a traffic ticket when he testified in the 50th District Court. *Id.* at 99.

Contrary to petitioner's assertion, Wittebort never testified that *he* wrote or issued a traffic ticket to petitioner. Wittebort admitted that he made a mistake when he testified that he placed a ticket into petitioner's prison property. He explained the inconsistencies, in part, on the fact that he did not have any reports with him at the parole revocation hearing. "I was given very short notice of the parole hearing . . . so I didn't bring the paperwork with me." Evid. trans. at 33. Based on this record, the court cannot conclude that all of Wittebort's statements made at the revocation hearing with respect to the traffic ticket were "indisputably false." Furthermore, even if Wittebort's statements at the parole revocation hearing were "indisputably false," the issuance of a traffic ticket is not material to the charge that petitioner violated his conditions of parole by possessing heroin. Accordingly, petitioner's claims should be denied.

## **Recommendation**

I respectfully recommend that petitioner's habeas petition be dismissed. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.


Dated:  October 27, 2005              /s/ Hugh W. Brenneman, Jr.
                                      Hugh W. Brenneman, Jr.
                                      United States Magistrate Judge



ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).